IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

VICKIE BERGIN,

        Plaintiff,

    Vs.                              No. 13-2450-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Vickie Bergin's ("Bergin") Title II application for disability insurance benefits and Title XVI application for supplemental security income under the Social Security Act ("Act"). (Tr. 124-25). Born in 1952, Bergin alleges a disability onset set date of June 15, 2010, based on chronic pain and on the side effects from medication prescribed for the pain. (Tr. 17, 32-33). The administrative law judge ("ALJ") filed his eight-page decision on June 14, 2012, finding that Bergin was not under a disability through the date of his decision. (Tr. 17-24). With the Appeals Council's denial of Bergin's request for review, the ALJ's decision stands as the Commissioner's final decision. The administrative record (Dk. 9) and the parties' briefs are on file pursuant to D. Kan. Rule 83.7.1 (Dks. 10, 15 and 16), the case is ripe for review and decision.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but

mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful

activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id*. Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

At step one, the ALJ found Bergin had not engaged in substantial gainful activity since June 15, 2010. At step two, the ALJ found the following

severe impairments:  "history of a left ankle fracture, status post multiple surgeries and development of reflex sympathetic dystrophy." (Tr. 19). At this step, the ALJ noted that the record suggested other impairments including, "fibromyalgia, osteoarthritis, and a loss of cognition, but these are not documented by objective evidence and are therefore found to be non (sic) medically determinable." (Tr. 20).

At step three, the ALJ found that the impairments, individually or in combination, did not equal the severity of the Listing of Impairments. (Tr. 20). Before moving to steps four and five, the ALJ determined that Bergin had the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) including lifting and carrying ten pounds frequently and occasionally, sitting six of eight hours, standing and walking two hours, and occasionally stooping, bending, reaching, climbing stairs and ramps, crawling, and kneeling. She cannot crouch or climb ropes, ladders or scaffolds. She cannot operate foot controls with her left foot. She cannot crouch.

(Tr. 20). At step four, the ALJ found that the claimant was able to perform her past relevant work as a social services department manager and education director. (Tr. 23). In the alternative, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant has also acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (Tr. 23). The ALJ concluded that Bergin has not been under a disability from June 15, 2010, through the date of his decision. (Tr.

24).

**TESTIMONY AND EVIDENCE RELEVANT TO ISSUES**

In 1998, Bergin fell off a roof and fractured the calcaneus in her left foot that was repaired surgically with pins. The pain still worsened, and degenerative changes to the subtalar joint were observed. (Tr. 244). Subtalar fusion surgery was done by Dr. Bonar in 2004 and 2006. Dr. Bonar operated again in 2008 removing the hardware and performing other procedures on the left foot. Because of continued pain in February of 2009, Dr. Bonar referred Bergin to Dr. Simon for an evaluation on managing nerve pain in the left foot. In November of 2009, Dr. Grossman performed more surgical procedures on the left foot. Despite nine surgeries, Bergin's chronic pain so interfered with her ability to work as a director at Wright Business School that she was forced to quit her job in June of 2010. In August of 2010, Dr. Bonar referred Bergin to Dr. Vince Johnson for pain management.

Dr. Johnson diagnosed reflex sympathetic dystrophy syndrome ("RSD") that was "fairly long-standing." (Tr. 338). At the first visit in August of 2010, Dr. Johnson prescribed a "less cognitively impairing opiate analgesic" noting "[s]he will have a little more cognitive stimulation that will not be too obtunded by this medication." (Tr. 332). He also recorded that he would make one medication change at a time, so he could evaluate its effectiveness on a chronic pain situation. *Id.* In October of 2010, Dr. Johnson continued a

prescription of "Darvocet as needed for breakthrough pain" and added a trial of Neurontin. He also recorded the options of lumbar sympathetic block and spinal cord stimulator. (Tr. 336). In November of 2010, the visit notes show the Neurontin had brought Bergin "60% relief of . . . overall pain" and significant increase in strength and much-improved ambulation. (Tr. 338). Despite this improvement, Dr. Johnson also reported "significant side effects with her current medications" including "dizziness, blurred vision, drowsiness, and cognitive dysfunction." *Id*. In December of 2010, Dr. Johnson described significant improvement "primarily with the Neurontin" and little use of other breakthrough pain medicine. (Tr. 352). He increased the dosage of Neurontin hoping for "some incremental improvement with no increase in side effects." *Id.*

On March 1, 2011, Bergin told Dr. Johson that her pain was 4 or 5 out of 10 with current medications and increased to 10/10 with activity and that she was experiencing significant sleep disruption. (Tr. 350). The dosage of Neurontin was increased, and Tylenol No. 3 up to three times a day and Silenor, for sleep, were added. *Id*. On March 29, 2011, Dr. Johnson observed a decreased range of lateral movement, dorsiflexion and plantar flexion and also hyperpathia about the bilateral ankles with some pretibial edema. (Tr. 341). He noted that Bergin's disruption of sleep was due to pain. Bergin reported that she was taking Tylenol 3 doses in the morning, occasionally in the afternoon,

7

and at bedtime. Dr. Johnson explained to Bergin the risks with the codeine component to the Tylenol 3. *Id.*

On June 28, 2011, Bergin told Dr. Johnson that because the Tylenol 3 was not as effective as before, she was having "pretty significant" pain and "burning sensation in the left lateral foot and it seems to be exacerbated with activity." (Tr. 346). She also reported "some cognitive dysfunction secondary to her medications" such that "she cannot read with much . . . comprehension and has trouble with numbers." *Id.* In his exam of Bergin, Dr. Johnson noted that Bergin had "some short-term cognitive defects" and that, "[t]his may be secondary to either Neurontin, which she is taking 2400 mg a day or Tylenol with codeine" which she is "taking 3 of the 30 mg codeine tablets a day and with ongoing pain, we have elected to increase that to 4 a day." (Tr. 346). Dr. Johnson's written assessment included, "Cognitive defects secondary to medication." (Tr. 346).

At her next visit, Dr. Johnson wrote Bergin "is a very unfortunate 59-year-old female who has chronic neuropathic pain, left lower extremity," "has classic RSD in the leg," and "is also having significant cognitive defects with her medications." (Tr. 340). He also wrote, "I am concerned that her medications are significantly impairing her ability to function" and he was advocating that Bergin try a spinal cord stimulator so that her medications could be reduced. *Id.*

Her treating physician, Dr. Nora Gomez, referred Bergin for a neurologic consultation by Dr. Cochran on September 17, 2011. (Tr. 382). This exam showed that Bergin scored 29/30 and 2/3 on short term recall with the ability to relay her history. (Tr. 383). In the assessment, Dr. Cochran offered that Bergin had done "fairly well on the mini mental status examination," that other tests would be run to find the cause for her memory loss complaint, and that "[i]t is very possible that a lot of her memory issues may be medication-related for which, of course, there is nothing we can do, if this is the etiology. Things that may contribute to it may be Tylenol #3, Neurontin, Prozac, Cymbalta and Benadryl." (Tr. 384).

On October 5, 2011, Bergin referred herself to Mid-America Physiatrists, P.A., for a consultation and exam to determine if she had a diagnosis of fibromyalgia. She was seen by the Nurse Practitioner, Donna Ruck, A.R.N.P. who found tenderness in 18/18 trigger points and who reported the impression of widespread body pain and depression. (Tr. 359).

On November 8, 2011, Bergin was seen by Dr. Johnson for "myofascial pain, chronic pain, and neuropathic pain." (Tr. 362). The treatment notes reflect that Bergin had tried the spinal cord stimulator without receiving much relief so the prescriptions for Neurontin and Tylenol 3 would be continued. *Id*. Dr. Johnson noted that Bergin had been having a "little better mental clarity during the day" and was continuing on the Cymbalta prescribed

9

by her general practice physician. *Id.* Dr. Johnson also wrote that Bergin thought she was "doing remarkably well from the physical standpoint" and had increased her physical activity as to include walking and had considered joining a nearby fitness center for swimming and yoga. *Id*.

Following that visit, Bergin again was seen at the Pain Clinic for "symptomatic myofascial pain, complex pain management, neuropathic pain, and chronic pain." (Tr. 361). The treatment notes observe that while her foot pathology was the primary component of her RSD and "is relatively quiescent" now, "[h]er bigger problem is ongoing myofascial pain across her back and shoulders." (Tr. 361). The recommendation was that Bergin continue her current medications but "given the fact that she is having significant breakthrough pain," they started her on MS Contin also. *Id*.

Dr. Gomez's treatment notes from December 2011 show an assessment of anxiety/panic disorder, depression, and fibromyalgia. (Tr. 366). Bergin was started on Zoloft and her prescription for Cymbalta was continued. *Id*.

**ISSUE ONE:   PROPER WEIGHING OF MEDICAL OPINIONS**

The ALJ's duties include evaluating all medical opinions in the record, assigning weight to each opinion, and discussing the weight given to each. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). A "treating physician's opinion

is given particular weight because of his unique perspective to the medical evidence." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). A treating physician's opinion, however, is not entitled to controlling weight "'if it is not well-supported by medically acceptable clinical and laboratory techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). A decision or finding that does not give the treating physician's opinion controlling weight, as here, does not mean that the physician's opinion was "rejected." *Id*. (quoting SSR 96-2p, 1996 WL 374188, at *4). Instead, a treating physician's opinion is "still entitled to deference and subject to weighing under the relevant factors." *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (citing 20 C.F.R. § 404.1527). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). An ALJ is not required to discuss each of these factors, but the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Asture*, 509 F.3d 1254,

11

1258 (10th Cir. 2007) (internal quotation marks and citations omitted).

Nothing more is required than for the ALJ to provide "good reasons in his

decision for the weight he gave to the treating sources' opinions." *Id.* "Finally,

if the ALJ rejects the opinion completely, he must then give 'specific, legitimate

reasons' for doing so." *Watkins*, 350 F.3d at 1301 (citing *Miller v. Chater*, 99

F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513

(10th Cir.1987)).

The ALJ gave "no significant weight to the medical source

statement of" Dr. Bonar, "that merely states the conclusion that claimant is

disabled and unable to work, because this statement is not supported by the

underlying medical evidence that shows that claimant has retained a capacity

for some work and that her pain is under better control with medication such as

Neurotin." (Tr. 22). Bergin argues that there is no substantial evidence of

record to support this finding and that any medical evidence of record from

treating or examining sources does not contradict Dr. Bonar's opinion but

supports it.

The ALJ fails to explain how Dr. Bonar's medical source statement

of September 10, 2010, is no more than a stated conclusion. "[A] treating

physician's report may be rejected if it is brief, conclusory and unsupported by

medical evidence." *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). Dr.

Bonar's statement identified Bergin's "prior injuries" and "complications from

injury" as the reason for Bergin being "severely limited . . . and taking medication for chronic severe pain." (Tr. 277). The medical record from Dr. Bonar is more than this medical source statement. "Medical opinions are statements form from physicians . . . that reflect judgments about the nature and severity of your impairments(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Notably, the ALJ does not say that Dr. Bonar's opinion is contradicted by her own treatment notes of Bergin from 2006 through 2010. (Ex. 3F). Having operated on Bergin three times in an effort to address the ongoing problems with pain, Dr. Bonar would be quite familiar with Bergin's condition, with the impact of pain on Bergin and her efforts to relieve it, and with Bergin's situation as to make a prognosis as of September 2010. By regulation, the Commissioner is to give generally "more weight" to the opinions of medical sources who have treated a claimant as they are "most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations . . . ." 20 C.F.R. § 404.1527(c)(2). An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v.*

*Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation and emphasis omitted).

The ALJ's reason that Dr. Bonar's "statement is not supported by the underlying medical evidence that shows that claimant has retained a capacity for some work" is not sufficiently specific. (Tr. 22). In *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), the court remanded a case because the ALJ, in making a similar finding about a treating physician, "failed to explain or identify what the claimed inconsistencies were between [the treating physician's opinion] and the other substantial evidence in the record," and did not provide "sufficiently specific" reasons for a meaningful review of his findings. The ALJ here did not accompany his conclusion with any record citations to well-supported medical evidence that would contradict Dr. Bonar's opinion as of September 2010. The ALJ does refer to medical evidence that Bergin's "pain is under better control with medication such as Neurotin." *Id.*

The pain medication of Neurotin was prescribed in October 2010 by Dr. Johnson to whom Dr. Bonar had referred Bergin for pain management. If Dr. Bonar's opinion in September 2010 is entitled to no significant weight because of Dr. Johnson's subsequent pain management treatment in the fall of 2010 and in 2011, then the court is at a loss to find valid reasons for the ALJ's decision to accord "significant weight" to the state agency non-examining medical consultant's RFC of October of 2010 which also predates Dr. Johnson's

14

treatment.1  The medical consultant's RFC does not mention any of Dr. Johnson's treatment, mostly highlights positive reports after surgery, but fails to address the claimant's ongoing pain problems or to provide any reasons for the stated RFC. (Tr. 286-292). As far as the severity of the claimant's stated symptoms, the consultant offered only, "Clmt is considered mostly credible." (Tr. 290). The medical consultant's opinion does not appear to be based upon any recognized likelihood of the plaintiff's limitations and/or pain improving with additional pain management treatment.

The treatment records of Dr. Bonar indicate a concern over RSD and a referral of Bergin in 2006 for pain management treatment by another physician which did provide some limited and temporary relief. (Tr. 265-66). Dr. Bonar's referral to Dr. Johnson occurred in August of 2010 when Bergin came with complaints of "marked pain" that limits her ability to stand and sit and that requires her to "take narcotics regularly to help with pain that interferes with driving and working." (Tr. 257). The court is unable to find substantial evidence in the record to support the ALJ's finding that Dr. Bonar's opinion is entitled to "no significant weight." The medical records from Dr.

---

1 The ALJ must explain with valid reasons the choice of medical source's opinion over another when the opinions differ. *Quintero v. Colvin*, ---Fed. Appx.---, 2014 WL 2523705 at *4 (10th Cir. Jun. 5, 2014); *see Reveteriano v. Astrue*, 490 Fed. Appx. 945, 947 (10th Cir. 2012) ("[T]o the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. §§ [404.1527(c)] and [416.927(c)].").

Johnson do indicate that his treatment of Bergin did improve her management of pain and her mobility. But as the Commissioner notes, Dr. Johnson was not asked to give an opinion on the severity of Bergin's impairments and the resulting physical or mental restrictions. After looking at Dr. Johnson's treatment notes, the ALJ appears to be offering his own "medical judgment of what he thinks are the clinical signs typically associated with chronic musculoskeletal pain without some type of support for this determination." *Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1262 (D. Kan. 2002). Indeed, the ALJ has no medical evidence of record concerning the plaintiff's RFC following Dr. Johnson's treatment in 2010 and 2011. What is noteworthy throughout Dr. Johnson's records is his repeated assessment of chronic pain and some improvement in mobility and pain only with medications that caused such "significant side effects" as dizziness, blurred vision, drowsiness, sleep disruption, and cognitive dysfunction. (Tr. 338, 340, 344, 346, 350). While the more recent treatment notes include Dr. Johnson recommending increased physical activity, the record does not demonstrate that this recommendation necessarily contradicts or undermines Dr. Bonar's RFC opinion particularly in light of the plaintiff's testimony about her attempts at increasing physical activity and her need for rest after such attempts. The ALJ's decision fails to consider Dr. Johnson's last assessment in the medical record that included: "Myofascial pain, complex medication management, neuropathic pain, and

16

chronic pain syndrome." (Tr. 361). The court cannot say that substantial evidence sustains the ALJ's decision to accord "no significant weight" to Dr. Bonar's opinion and "significant weight" to the state agency non-examining medical consultant.

**ISSUE TWO: PROPER ASSESSMENT OF BERGIN'S CREDIBILITY**

Tenth Circuit "precedent does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (internal quotation marks and citation omitted). The ALJ here laid out the three-step analysis set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), for evaluating a claimant's complaint of disabling pain. The Commissioner has promulgated regulations identifying factors relevant in evaluating symptoms: daily activities; location, duration, frequency and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii). The ALJ's decision does not lay out these factors, does not discuss most of them, and does not cite to specific evidence in support of those findings.

17

At the hearing, Bergin testified to the following side effects from the pain medication prescribed by Dr. Johnson:

> I have severe fatigue. I usually have to take a nap in the afternoon. After I take my medicines in the morning, I can't stay awake. In other words, even if I try, I will fall asleep. I have dizziness. I sometimes get nauseous. I have blurred vision. I didn't wear glasses before this and now I do and still I have blurred vision. I get headaches real bad.

(Tr. 45). Noting that the severity of these side effects had varied with good days and bad, Bergin said she was being seen by neurologist to determine if there were other causes for symptomology. *Id*. Bergin testified she had been informed that the side effects of sedation and impaired concentration were primarily caused by the medication. *Id.*

The ALJ found that "[t]here is no evidence of significant or disabling side effects." (Tr. 22). Considering that the record, including the plaintiff's own testimony, mentions side effects, one could read the ALJ's finding to be that the side effects are not "significant or disabling." His decision, however, lacks any such explanation and is devoid of any citations to specific evidence supporting such a conclusion. The record does not appear to provide substantial evidence for such a finding that is overwhelmed by medical evidence directly to the contrary. The court recognizes that credibility determinations "are peculiarly the province of the finder of fact," but the record does not offer substantial evidence in support of it. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The Commissioner does not defend this finding

18

other than to suggest that the plaintiff's statements on the side effects are

arguably inconsistent. The ALJ made no such finding and did not give it as a

reason for the ALJ's conclusion. "[T]his court may not create or adopt post-hoc

rationalizations to support the ALJ's decision that are not apparent from the

ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir.

2007).

 The court agrees with Bergin that the ALJ utterly failed to consider

the uncontroverted evidence regarding her consistent reports of pain, her

pursuit of serious and different treatment options for relief, and her persistent

use of prescription pain medication and the significant side effects from their

use. The Tenth Circuit in *Sitsler v. Astrue*, 410 Fed. Appx. 112, 117 (10th Cir.

Jan. 10, 2011), addressed a similar situation:

> It is true that an ALJ need not do a "factor-by-factor" analysis in
> assessing credibility. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.
> 2000). But Mr. Sitsler contends that his pain medication prescriptions
> were uncontroverted, particularly probative evidence the ALJ was
> required to discuss. See *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.
> 1996). On this record, we agree. In *Hardman v. Barnhart*, 362 F.3d 676,
> 680 (10th Cir. 2004), we held that, in assessing the credibility of a
> claimant's complaints of disabling pain, "[i]t was error for the ALJ to fail
> to expressly consider claimant's persistent attempts to find relief from
> his pain, his willingness to try various treatments for his pain, and his
> frequent contact with physicians concerning his pain-related
> complaints." And in *Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir.2004),
> noting that the claimant's medical records were "replete with his reports
> of pain and of prescriptions and refills for medication," *id*. at 1221, we
> concluded that the other evidence cited by the ALJ was "insufficient to
> undermine his pain allegations," *id*. at 1222. Here the record is also
> replete with prescriptions and refills for pain medication, including
> narcotics. This is evidence the ALJ should have expressly considered and

weighed in determining whether Mr. Sitsler's complaints of disabling pain were credible. See *Clifton*, 79 F.3d at 1010.

The evidence of record is replete with Bergin taking her prescribed pain medications, including narcotics, and still experiencing pain. More importantly, the treatment notes show physicians repeatedly expressing concern over cognitive dysfunction, memory issues, and significant impairments all secondary to her pain medications. (Tr. 340, 346, 384). The ALJ failed to consider this significant and uncontroverted evidence in determining Bergin's complaints of disabling pain and the significant side effects from pain medications. This error is not harmless considering the uncontroverted nature of this evidence, the severity of the side effects, and the possible effect on the claimant's ability to perform her past relevant work.

In light of the errors noted above in the ALJ's analysis and weighing of the medical opinions and in the consideration of evidence about the side effects from the plaintiff's pain medications, the case shall be remanded for the ALJ to make a proper consideration of the same. Bergin asks for a reversal and remand with directions to award disability benefits, but the court finds that a remand for further proceedings would serve a useful purpose and would not merely delay the receipt of benefits. Nor can the court say that the administrative record has been fully developed such that substantial and uncontroverted evidence in the record establishes the claimant is disabled and entitled to benefits. See *McHenry v. Colvin*, 2013 WL 4849107 at *7 (D. Kan.

20

Sep. 11, 2013).

IT IS THEREFORE ORDERED that the decision of the Commissioner is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 29th day of August, 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge